## HARLOW *vs.* CLEGHORN.

1. The assignee of a *fi. fa.* made the following contract with the widow of defendant in *fi. fa.*, who was claiming dower, on condition that she would let the entire property levied on be sold : "I agree as assignee of a *fi. fa.*, Cadow, McKenzie & Co., *vs.* James Harlow, that in the event said land levied on by said *fi. fa.* comes to sale that Mrs. Harlow, widow of said James Harlow, deceased, shall have all said land may bring above $600.00 and twelve per cent. interest from date hereof ; also, if said Cleghorn, assignee of *fi. fa.*, becomes the purchaser of said land, he agrees to sell the same to Mrs. Harlow for $600.00, at twelve per cent. interest from date hereof, due the first day of January, 1877. I, C. C. Cleghorn, further agree, if the $600.00 is paid with twelve per cent. interest from date, to give her, Mrs. Harlow, control of *fi. fa.*, and also to give her control of *fi. fa.* after sale, and the credit due entered thereon, if not assigned before. This eighth day of February, 1876 :"

*Held*, that time was not of the essence of the contract, and that the right to redeem the lot did not expire on January 1st, 1877.

2. Concealment of material facts may, in itself, amount to a fraud, when from any reason one party has a right to expect full communication of the facts from the other, or where one party knows that the other is laboring under a delusion with respect to the property sold or the condition of the other party, and yet keeps silent.

Contracts. Fraud. Equity. Before Judge UNDERWOOD. Chattooga Superior Court. March Term, 1880.

Reported in the decision.

DABNEY & FOUCHE, for plaintiff in error,

ALEXANDER & WRIGHT, for defendant.

JACKSON, Chief Justice.

Mrs. Harlow brought a bill in equity against C. C. Cleghorn, in which it is alleged that she was entitled to dower in certain land of which her husband died seized and possessed, and had made application therefor—that the land, except her dower, was subject to an execution which she was anxious to control—that she could have bought it for $600.00, and not having the money, tried to borrow it from the defendant, but could not come up to his terms—that defendant afterwards bought the *fi. fa.* for $300.00—told her that he then owned it and induced her to believe that he had paid $600.00 for it, and that if she would let her dower sell with it he would do better for her than she had wished him to do when she tried to borrow the money from him, and made with her the following contract :

"GEORGIA, CHATTOOGA COUNTY. I agree as assignee of a *fi. fa.*, Cadow, McKenzie & Co., *vs.* James Harlow, that in the event said land levied on by said *fi. fa.* comes to sale, that Mrs. Harlow, widow of said James Harlow, deceased, shall have all said land may bring above $600.00 and twelve per cent. interest from date hereof; also, if said Cleghorn, assignee of *fi. fa.*, becomes the purchaser of said land, he agrees to sell the same to Mrs. Harlow for $600.00, at twelve per cent. interest from date hereof, due the first day of January, 1877. I, C. C. Cleghorn, further agree, if the $600.00 is paid with twelve per cent. interest from date, to give her, Mrs. Harlow, control of *fi. fa.*, and also to give her control of *fi. fa.* after sale, and the credit due entered thereon, if not assigned before. This eighth day of February, 1876.

C. C. CLEGHORN."

"Test—H. D. C. EDMUNDSON,

The bill further alleges that Cleghorn bought the land, that she could not redeem it at the date the price became

due, and defendant sold it for twelve hundred dollars, and prays that the contract be annulled for fraud, and if the land is in the hands of an innocent purchaser, that Cleghorn account to her for the amount he sold the land for over $300.00, and the rent thereof for the two years which he held it. Discovery was waived, but the defendant, sworn as a witness, testified as follows:

C. C. Cleghorn, sworn: "In March, 1875, J. Harlow, Sr. and John Taylor told me they had agreed to pay Cadow, McKenzie & Co. $600.00 for the *fi. fa.* They applied to me to advance the money or aid them to get it. I told them if I got some money from John Turner I would let them have it at the next term of court if they would secure me. When court came I did not have the money, I then said I would borrow the money and let them have it if they would secure me. They offered a mortgage on the land, which I declined, because I understood the land was incumbered by dower and other executions. I offered to take personal security and they did not give it. When all negotiations failed I told them not to depend on me any longer. Afterwards I went to Rome, and plaintiffs' attorney asked me to buy the *fi fa.* I told him I would not give him more than $300.00, and put in a claim I had on him for $50.00 or $60.00 in part payment. I told him I thought I could make more out of it. The *fi. fa.* was afterwards transferred to me on the terms I offered.

"Afterwards I met John Taylor at the post-office and he sought to negotiate with me about raising the $600.00 to buy the *fi. fa.* I told him I then owned the *fi. fa.*, and would do better than the original plaintiffs had offered; that I would give them twelve months time. He said he would write to Mrs. Harlow, and we all afterwards met in Taylor's office, and he had drawn up a mortgage to secure me in the sum of $600.00. Mr. Gamble was present and he drew up and I signed the contract in evidence. The parties present at the time were Gamble, Taylor, James Harlow, Sr., Gus Harlow, and Mrs. Harlow. I did not tell them

what I had paid for the *fi. fa.*, and I expect they thought I had paid $600.00 for it.

"Was present when the land was sold. Expected Mrs. Harlow to be represented there, but she was not, Did not say anything to suppress bidding. Did not say, nor hear any one say, the sale was to perfect title. Did not say he was the best friend of the widow who bid least. Think the land brought its full value at the sale. After the sale I gave Mrs. Harlow every opportunity to sell the land. Various persons came to me to buy the land and I always referred them to her, and I tried to sell it for her. She had until January 1st, 1877, to redeem the land by our contract. Just before the time expired they asked me if they could pay half, would I extend the time twelve months, and I agreed to do so; but they never paid anything. In the year 1877, Gus Harlow came to me and said they could not sell the land, and that I would have to take the land, and then he gave me up the contract between me and his mother.

" The sheriff put me in possession the day I bought it. It was rented by Mrs. Harlow that year for $125.00. I made a new contract with the tenant. I got as rent in 1876 $80.00, in money, and the balance was claimed by the tenant for repairs. In 1877 I rented it for $125.00. In 1877, I sold the land to J. A. Starling for $1200.00, payable in one, two and three years, with interest at 7 per cent. The only time I had any conversation with Mrs. Harlow about this matter at all, was at Taylor's office, when I signed the paper in evidence as the contract between us."

Cleghorn bought the land at the sheriff's sale, free from dower, for $806.00. Its value at that time was variously estimated from $600.00 to $1200.00. There seemed to be an impression that the land was sold by the sheriff to perfect title, and thus may have been bought under its value; but the defendant said nothing to produce such an impression.

The jury found for defendant, and a motion for new trial on the ground that the verdict of the jury was contrary to law, equity and evidence, and that the court erred in construing the contract, having been overruled, the complainant excepted.

1. 2. The court construed the contract to mean that Mrs. Harlow was entitled to all the land might bring at the sale thereof by the sheriff, under the *fi. fa.* held by Cleghorn as assignee thereof, over six hundred dollars, with interest at 12 per cent. from February 8th, 1876, provided Cleghorn was not the purchaser at said sale; but if Cleghorn was the purchaser at said sale, then Mrs. Harlow had the right to become the purchaser of said land from Cleghorn, provided she should, on or before the first day of January, 1877, pay to said Cleghorn six hundred dollars with 12 per cent. interest from February 8th, 1876, and she did not have the right to demand of Cleghorn the excess of his bid over six hundred dollars if Cleghorn was the purchaser.

We think that time is not of the essence of this contract, and that the construction put upon it by the court that the right of complainant to redeem expired on the first day of January, 1877, is not the true intent and meaning thereof. ⸳ If the contract was delivered up by the complainant, and she abandoned her right to sell the land or redeem it with knowledge of facts known to defendant, then Cleghorn was released; but whether Gus Harlow was her agent to surrender it does not appear. The jury may have been controlled by the construction put upon the contract by the court, and not by the surrender of the contract.

It will be observed, too, that the defendant bought the land under his own execution, and it cost him only the $300.00 which he paid for it. The execution was for $567.00 principal, interest to judgment $24.80, and interest besides was due on it from September 3d, 1860, making due upon it some twelve or thirteen hundred dollars. He had the

advantage of all other bidders.   He could bid the whole amount of the *fi. fa.*, principal and interest, and yet really bid but $300.00, the price he paid for the execution.   It would seem, therefore, that either the true meaning of the contract was that Mrs. Harlow was to have all over $600.00 which the land brought, no matter who purchased it, Cleghorn or another, and in addition to this right was also to have the right to redeem if Cleghorn bought at the sale, or the defendant made a very one sided bargain with her. The bill is brought on the charge of fraud on the part of defendant, and such a construction of the contract, which seems to have been written by his counsel and at his instance, would perhaps give color to the charge.

Be that as it may, the defendant himself admits that *he thought* Mrs. Harlow and her friends with her, when the contract was made, thought he had paid $600.00 for the execution.   That was the sum at which it had been offered to them ; that is the sum which they had tried to borrow from him to buy it for the widow; and though he believed they thought he had given that sum for it, he concealed that fact and drove the bargain, knowing that this woman was sacrificing her dower on a misconception of the truth which he knew and did not divulge.

Equity will not allow this to be done.   Without going elsewhere for authority, our Code, §2635, declares: "Concealment of material facts may, in itself, amount to a fraud, when, from any reason, one party has a right to expect full communication of the facts from the other ; where one party knows that the other is laboring under a delusion with respect to the property sold or the condition of the other party, and yet keeps silence."

It would seem that this law fits this case, and that the complainant is entitled to recover from the defendant all that he got for this land, over and above what it cost him, with reasonable allowance for interest and necessary expenses, or at least the value of her dower, with the rents, issues and profits thereon ; unless with a full knowledge

of her rights and full information from the defendant of matters known to him and not to her, which operated on her mind in making the contract, she voluntarily surrendered her rights, or authorized it to be done.

Judgment reversed.